[Cite as *State v. Hostacky*, 2014-Ohio-2975.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100003

---

# STATE OF OHIO

**PLAINTIFF-APPELLEE**

vs.

# DENNIS HOSTACKY

**DEFENDANT-APPELLANT**

---

## JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART,
### AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-567826

**BEFORE:**   Jones, P.J., Rocco, J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   July 3, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY: Jeffrey Gamso
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Fallon Radigan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Dennis Hostacky appeals his convictions for aggravated robbery, kidnapping, theft, carrying a concealed weapon, and having weapons while under disability. The state concedes Hostacky's argument with respect to merger as to the having weapons while under disability counts; thus, his convictions and sentences are affirmed in part and reversed in part, and this case is remanded for proceedings consistent with this opinion.

## I. Procedural History and Facts

{¶2} In 2012, Hostacky was charged with the following: one count each of kidnapping and aggravated robbery, both with one- and three-year firearm, notice of prior conviction, and repeat violent offender specifications; one count each of misdemeanor theft, carrying a concealed weapon and improperly handling firearms in a motor vehicle; and two counts of having weapons while under disability.

{¶3} Prior to trial, Hostacky waived his right to a jury trial with regard to the notice of prior conviction and repeat violent offender specifications and the having weapons under disability counts. The case proceeded to a jury trial on the remaining charges.

{¶4} The following facts pertinent to this appeal were presented at trial.

{¶5} Gary Humpal answered an advertisement on Craigslist for employment. He went to meet a man by the name of "Steve" in the parking lot of Sam's Club on Brookpark Road early one morning to receive instructions for the job, that consisted of

going door-to-door to pass out flyers for a landscaping company. Humpal was assigned to work with Hostacky; they drove to Rocky River in Hostacky's minivan. When they arrived in Rocky River, the men began to pass out flyers on different sides of a residential street

{¶6} The men took a break for lunch. Humpal testified that he had a couple hundred dollars on him, which Hostacky saw when he paid for lunch. After lunch, the men continued to pass out flyers for approximately two or three more hours before Steve stopped by to pay them.

{¶7} Humpal testified that Hostacky convinced him to stop early and offered to take him back to Sam's Club, but instead, took Humpal to a bar. Humpal testified that he drank "water with lemon," because he did not drink alcohol. While at the bar, Hostacky inquired if Humpal had ever tried heroin and said that he and his wife do "a bag" every night.

{¶8} After leaving the bar, Hostacky drove into Cleveland and picked up a woman named "Melissa."[1] At this time, Humpal moved into the backseat. He could see Hostacky and Melissa whispering, but could not hear them because he had headphones on.

{¶9} Hostacky drove to a store and stopped in the parking lot behind the store. Hostacky demanded Humpal's money, pulled out a gun from under the driver's seat,

---

[1]The same woman is identified as both "Melissa" and "Michelle" during trial, but because her identity is unknown and for ease of discussion, we will refer to her as Melissa.

jumped on top of Humpal, and went for Humpal's pockets. Humpal started "freaking" out and tried to jump out of the van. Humpal testified that he was wearing a blue jacket, which came off when he escaped out of the van. Humpal lost "several hundred dollars, his phone, jacket, his brother's vintage Plain Dealer bag, and a phone charger."

{¶10} Once Humpal was out of the van, Hostacky "peeled" out of the parking lot with Melissa, leaving Humpal behind.

{¶11} Humpal called the police from a nearby barber shop. When police arrived, they took Humpal to tour the area in search of Hostacky, but were unable to locate him. Humpal made a statement and picked Hostacky out of a photo array.

{¶12} Humpal admitted to having a criminal record for 2004 and 2005 convictions.

{¶13} Cleveland Police Sergeant Tommy Shoulders testified he arrived on scene and spoke with Humpal, who was "upset." Through his investigation, the sergeant discovered Hostacky's name and address and located the minivan at his home in North Ridgeville. Humpal's jacket, phone charger, Walkman, ear buds, and Plain Dealer bag were located inside the van, but the gun and money were not recovered.

{¶14} Cleveland Police Officer Elizabeth Galarza testified she responded to the scene and Humpal appeared "scared and terrified." She stated that he was "visibly shaken, crying * * * I would say he was terrified." She later elaborated that "he was visibly shaken; he was shaking, he was crying. He didn't have his jacket because the suspect took his jacket; it was cold out. He couldn't believe that the guy put a gun in his

face."

{¶15} Detective Elliot Landrau testified that he arrived on scene, spoke with Humpal, and drove Humpal around for approximately four hours looking for the minivan. Based on his experience, the detective did not think Humpal was under the influence of drugs or alcohol. The detective explained how people who are under the influence of crack cocaine emit a distinctive "plastic" smell and usually have burns and calluses on their fingers and lips from the glass pipes used to smoke the drug. The detective testified that Humpal "was in the back seat of our car for several hours; throughout the day he was in our office. I watched this individual" and he did not have any of these characteristics.

{¶16} Detective Landrau eventually recovered Humpal's items from Hostacky's minivan. He also took a statement from Hostacky, who "started telling us a story that they had been getting high or drinking and all that. We knew that this was not true and we advised him of that and we terminated our interview, because we knew it wasn't going to be an accurate, truthful statement, so we didn't want to waste our time listening to all that."

{¶17} Hostacky testified he was married with six children. On the day of the incident, he was working with Humpal passing out flyers in Rocky River. When they went to the bar, Hostacky had two beers, a vodka, and a shot and Humpal had one shot of vodka. When they were driving back to Sam's Club, Humpal wanted to smoke marijuana. Hostacky told Humpal he could not smoke pot because he was on probation

but he could smoke crack so the men went to a store and bought two crack pipes.

{¶18} Hostacky further testified that the men bought $50 worth of crack cocaine and smoked it. They bought $100 more of the drug. Humpal told Hostacky, "they should get a girl." Hostacky testified that he had some girls "he hung out with," but did not want to introduce them to Humpal, so he drove to an area frequented by prostitutes and picked up Melissa. Hostacky stated that Humpal and Melissa "took care of business" in the back seat and, although Melissa "offered" him the same, he declined her invitation.

{¶19} Hostacky testified that they wanted more crack cocaine, but because they were out of both drugs and money, Humpal suggested he sell his food stamps. Hostacky drove to a store where Humpal could sell his food stamps, but while Humpal was in the store, Hostacky's wife texted him to come home. Hostacky testified,

> part of why I get high, I just kind of don't want to deal with things. I finally started checking my phone messages. My wife had texted a couple times and I see I missed two calls.

Hostacky testified that he texted his wife and told her he was on his way home, that "he lied" to his wife and said he would "be home in a minute."

{¶20} Hostacky left, leaving Humpal behind. Hostacky admitted that he took Melissa with him and dropped her off even though he left Humpal at the store. Finally, Hostacky testified "when it comes to lying, yeah, I'm more—I'm a liar when I'm high."

{¶21} Hostacky admitted he had a record and was currently on postrelease control; he had been convicted of burglary and theft. He denied having a gun or using it on Humpal. He admitted to being a drug addict since he was 14 years old and his drug of

choice was crack cocaine.

{¶22} The jury convicted Hostacky of kidnapping and aggravated robbery with the one- and three-year firearm specifications, theft, and carrying a concealed weapon but acquitted him of improperly handling firearms in a motor vehicle. The trial court convicted Hostacky of two counts of having weapons under disability but acquitted him of the notice of prior conviction and repeat violent offender specifications.

{¶23} At sentencing, the trial court stated it was imposing a total sentence of eight years in prison as follows: the aggravated robbery and kidnapping charges merged with three years on the "base charge" and three years on the firearm specification to be served prior and consecutive to the underlying sentence; time served for theft; 18 months for carrying a concealed weapon count to be served concurrent with the other counts and 12 months for each having weapons under disability count, to run consecutive to each other.

{¶24} Hostacky timely filed his notice of appeal.

{¶25} Prior to oral argument in this case, we remanded the case to the trial court, noting that the sentencing journal entry imposed a six-year sentence, contrary to the eight-year sentence the court stated it was imposing during the sentencing hearing. We further noted that the trial court did not mention in its journal entry whether the state had elected to proceed to sentencing on the aggravated robbery or kidnapping conviction. This court indicated that the trial court's jurisdiction on remand was limited to clarifying the sentencing journal entry by identifying whether the sentence was imposed on the aggravated robbery or kidnapping conviction and to make the appropriate corrections to

the journal entry to reflect the sentence actually imposed by the court at the sentencing hearing.

{¶26} On remand, the trial court issued a nunc pro tunc entry in which it noted that the state elected to proceed to sentencing on the aggravated robbery count. The trial court further noted that Hostacky was sentenced to 12 months on each having weapons under disability count and that the counts were to run consecutive to each other and to all other counts, for a total sentence of eight years in prison.

{¶27} Hostacky raises four assignments of error for our review.

## II. Assignments of Error

I. It is plain error in violation of the Sixth and Fourteenth Amendments and Section 10, Article I of the Ohio Constitution for police officers to invade the province of the jury by declaring the story told by the alleged victim in a case was true and that the statements of the defendant were lies.

II. Pervasive prosecutorial misconduct during rebuttal closing argument constituted plain error in violation of the Sixth and Fourteenth Amendments and Section 10, Article I of the Ohio Constitution.

III. Mr. Hostacky received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and under Section 10, Article I of the Ohio Constitution when his attorney repeatedly and consistently failed to object to testimony and argument that were highly improper and prejudicial.

IV. The trial court committed error when it imposed separate and consecutive sentences for two counts of having a weapon under a disability when the two charges address possession of the same gun at the same time.

## III. Law and Analysis

**Witness Testimony**

**{¶28}** In the first assignment of error, Hostacky claims that the trial court committed plain error for failing to exclude certain statements made by two of the testifying police officers.

**{¶29}** The trial court has broad discretion in the admission or exclusion of evidence. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

**{¶30}** Hostacky concedes that he failed to object at trial to the instances of which he now complains; therefore, he waives all but plain error. In order to find plain error, it must be determined that, but for the error, the outcome of the proceeding clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 96-97, 372 N.E.2d 804 (1978).

**{¶31}** Hostacky's first claim is that Officer Galarza improperly vouched for Humpal's credibility when she testified: "At first I thought he was drunk, then I realized it really happened to him."

**{¶32}** Hostacky relies on this court's decision in *State v. Young*, 8th Dist. Cuyahoga No. 79243, 2002-Ohio-2744, where this court found plain error when a detective, asked whether a witness's story was consistent, testified the witness was telling the truth. This court found that the police officer usurped the role of the jury in determining witness credibility. *Id.* at ¶ 63.

**{¶33}** But in *State v. Craig*, 8th Dist. Cuyahoga No. 94455, 2011-Ohio-206, this

court declined to find plain error when an officer testified that she believed a witness, the defendant's girlfriend, had lied to her about the defendant's real name. This court noted that the officer was testifying to the steps in his investigation and whether he could rely on the information the defendant's girlfriend provided to him. The court also noted that there was evidence other than the officer's improperly admitted statement to convict the defendant. *Id.* at ¶ 18.

{¶34} We find the instant case more analogous to *Craig*. When Officer Galarza made the statement that she "realized it really happened to him," she was not improperly vouching for the victim's credibility. On cross-examination, defense counsel questioned Officer Galarza about the victim's demeanor in an apparent attempt to have the officer admit that Humpal was angry Hostacky left him at the store without a ride, as opposed to scared because he had been robbed at gunpoint. On redirect, the state asked the officer to describe Humpal's demeanor and why the officer, on cross-examination, had described Humpal's demeanor as "afraid or terrified," instead of "angry." Galarza responded:

> His demeanor was he was visibly shaken; he was shaking, he was crying. He didn't have his jacket because the suspect took his jacket; it was cold out. He couldn't believe that the guy put a gun in his face. He was just like somebody that was robbed, he was just crying and shaking. At first I thought he was drunk, then I realized that it really happened to him.

{¶35} In the context of her testimony, we do not find that Galarza's statement amounts to improper opinion testimony. Galarza was merely explaining on redirect, after cross-examination about the victim's demeanor, how the victim was acting when she arrived on scene.

{¶36} Hostacky's second complaint is with regard to Detective Landrau's testimony. Hostacky claims that Detective Landrau improperly opined that Hostacky was not being truthful when the detective testified that, during his interview with Hostacky, the suspect told

> a story that they had been getting high or drinking and all that. We knew this was not true and we advised him of that and we terminated our interview because we knew it wasn't going to be an accurate, truthful statement, so we didn't want to waste our time listening to all that.

Hostacky claims that allowing this statement into evidence amounted to plain error and deprived him of a fair trial.

{¶37} We decline to find that the detective's statement that he did not believe Hostacky's story amounted to plain error. We agree with the state that when reviewing the record in its totality, Hostacky was not prejudiced by the admission of the officer's statements. During this portion of the detective's testimony, he was explaining the steps he took in his investigation. We further note that Hostacky testified on his own behalf; therefore, the jury was able to perceive his credibility firsthand and decide for themselves whether he was being truthful. *State v. Allen*, 8th Dist. Cuyahoga No. 92482, 2010-Ohio-9, ¶ 52, citing *State v. Burchett*, 12th Dist. Preble Nos. 2003-09-017 and 2003-09-018, 2004-Ohio-4983,¶ 20; *see also State v. Proffitt*, 72 Ohio App.3d 807, 596 N.E.2d 527 (12th Dist.1991).

{¶38} Finally, we note that there was other evidence to support Hostacky's conviction. When the police arrested Hostacky, they found Humpal's belongings in his van. Thus, "the determinative issue for the trier of fact" was not only the truthfulness

and credibility of the victim and the defendant. *See Allen* at ¶ 53.

{¶39} In light of the above, although the admission of Detective Landrau's statement may have been in error, we decline to find that it amounted to plain error.

{¶40} The first assignment of error is overruled.

**Prosecutorial Misconduct**

{¶41} In the second assignment of error, Hostacky argues that the state committed prosecutorial misconduct. He again concedes that because he did not object to the prosecutor's allegedly improper statements, he is limited to arguing plain error on appeal.

{¶42} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. *State v. Bey,* 85 Ohio St.3d 487, 493, 709 N.E.2d 484 (1999). The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. *Id.*

{¶43} Both the prosecution and the defense enjoy wide latitude in closing arguments as to what they believe the evidence has shown and what reasonable inferences may be drawn from the evidence. *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). Moreover, "prosecutorial misconduct constitutes reversible error only in 'rare instances.'" *State v. Keenan,* 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993), quoting *State v. DePew*, 38 Ohio St.3d 275, 288, 528 N.E.2d 542 (1988).

{¶44} Hostacky's initial claim is that the prosecutor committed misconduct by making general statements to the jury during closing arguments that crime is pervasive throughout the county, drugs are destroying neighborhoods, and crime affects all families,

including defendants' families.

**{¶45}** We agree with Hostacky that these statements were irrelevant to the question of whether he was guilty of the crimes he was charged with; however, their admission does not rise to the level of plain error because there is no evidence that, but for their admission, the outcome of the trial would have been different.

**{¶46}** Hostacky next argues that the prosecutor improperly vouched for the victim's credibility by making the following statements during closing argument: "an officer said [Humpal] was sobbing that night [and] * * * after his testimony that day he was out in the hallway sobbing as well. He's a victim"; "as he so honestly told you"; "[w]hat you heard there was a truthful statement of a guy"; and "he [Humpal] wasn't lying to you."

**{¶47}** We recognize that

> a prosecutor is not allowed to express a personal opinion concerning the credibility of evidence, but can argue that the character, quality, or consistency of particular evidence or witnesses should be considered when assessing credibility.

*State v. Cody*, 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 35. Although it is never advisable for a prosecutor to aver that a witness is telling the truth, upon reviewing the prosecutor's remarks in the context of the entire trial, we do not find that they prejudicially affected Hostacky's substantial rights. The statements were made in the context of the prosecutor arguing that the victim did not have a motive to lie because he was a simple man who lived a simple life and his demeanor throughout the process showed that he was a victim.

**{¶48}** Moreover, the trial court instructed the jury that "opening statements and closing arguments do not constitute evidence in the case and will not be so considered." The jury is presumed to follow the instructions of the trial court. *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Hostacky has not pointed to any evidence in the record that the jury failed to do so in this case.

**{¶49}** In light of the above, the second assignment of error is overruled.

**Ineffective Assistance of Counsel**

**{¶50}** In the third assignment of error, Hostacky argues that he received ineffective assistance of counsel when his attorney failed to object to witness testimony and the prosecutor's closing argument and such failure was prejudicial to him.

**{¶51}** A defendant who claims constitutionally ineffective assistance of counsel must show not only that his or her lawyer's representation fell below reasonable professional standards, but that he or she was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Johnson*, 88 Ohio St.3d 95, 108, 723 N.E.2d 1054, (2000). As with prosecutorial misconduct, the defendant must show that he or she was deprived of a fair trial, meaning that, but for his or her lawyer's errors, there is a reasonable probability the outcome of the trial would have been different. *Strickland* at 687-694.

**{¶52}** Hostacky claims that trial counsel "repeatedly failed to object when he should have" during Officer Galarza and Detective Landrau's testimonies and during the prosecutor's closing arguments. But a review of the record shows that defense counsel

did object throughout the trial. Trial counsel objected to the questions asked and evidence offered during both the direct and cross-examination of witnesses.

{¶53} Trial counsel chose when and what to object to at the time of the trial. Although Hostacky claims that Officer Galarza's testimony should have been objected to, counsel could have taken her testimony as an opportunity to question her perception and opinion of Humpal and other theories of what could have happened during the incident. We find the same to be true with regard to Detective Landrau's testimony. Trial counsel had the opportunity to object, and did object several times during his testimony, but he also chose to cross-examine Detective Landrau based on the facts and the evidence presented.

{¶54} Finally, with regard to the prosecutor's closing arguments, we do not find that Hostacky's perceived view of his counsel's lack of objecting rises to the level of ineffective assistance of counsel. Hostacky is asking this court to second guess counsel's trial strategy, and we decline to do so. *See State v. Grasso*, 8th Dist. Cuyahoga No. 98813, 2013-Ohio-1894, ¶ 62, citing *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38 ("Trial tactics and strategies do not constitute a denial of effective assistance of counsel.").

{¶55} Accordingly, the third assignment of error is overruled.

**Sentencing**

{¶56} In the fourth assignment of error, Hostacky claims that the trial court erred when it sentenced him to consecutive sentences for each count of having weapons under

disability.

{¶57} R.C. 2929.14(D)(1)(b) provides, "[a] court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of the same act or transaction." The Ohio Supreme Court has defined "the same act or transaction" as a "series of continuous acts bound by time, space and purpose, and directed toward a single objective." *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994). The state concedes this assignment of error, noting that since there was only one handgun and the facts arose out of a single incident, the two having weapons under disability counts should have merged.

{¶58} We agree and remand the case for the limited purpose of merging the having weapons under disability convictions. After such merger, the state shall elect to proceed with sentencing on either count and the court will resentence Hostacky on that count only. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 25:

> If, upon appeal, a court of appeals finds reversible error in the imposition of multiple punishments for allied offenses, the court must reverse the judgment of conviction and remand for a new sentencing hearing at which the state must elect which allied offense it will pursue against the defendant.

{¶59} The fourth assignment of error is sustained.

{¶60} Affirmed in part, reversed in part, and remanded.

It is ordered that appellant and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
TIM McCORMACK, J., CONCUR