[Cite as *State v. Williams*, 2024-Ohio-337.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                           No. 112481

    v.                           :

HAROLD WILLIAMS, III,                    :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 1, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-654135-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt, Assistant Prosecuting Attorney, *for appellee*.

Joseph V. Pagano, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Harold Williams III appeals his convictions stemming from two incidents, the murder of Angelo Catala and the shooting of a convenience store

employee three days later. Williams was sentenced to an indefinite life sentence with the possibility of parole after 27 years. For the following reasons, we affirm.

## I.    Facts

{¶ 2} In late October 2020, Williams sideswiped Catala's vehicle as Williams attempted to back out of the parking lot of a pizzeria. Catala's cousin worked at the pizzeria, and Catala had come to visit him. Williams was in the car with an acquaintance, Tammy Bostic, whom he had just met in person. They previously knew each other only through social media. Williams had intended to meet a friend who lived above the pizzeria, but his friend was not responding to messages. The couple sat in the car for a while before Williams attempted to back out of the parking spot. Both Williams and Bostic were under the influence of cocaine, although Williams stated he also had marijuana in his possession at the time. The incident was recorded on the pizzeria's video surveillance cameras. After the collision, Catala approached Williams's vehicle.

{¶ 3} For about 20 minutes, Williams and Catala discussed the accident while the video recorded both Williams and Bostic walking around Williams's car at various times throughout the encounter. Catala's friend was also present. He is the named victim with respect to the felonious assault conviction arising from this encounter. According to both Bostic and Williams, Catala was brandishing a firearm during most of their discussion and would not let either of them leave. Bostic claims she sat in the car the entire time and slid into the driver's seat when Williams stepped out a second time to review the damage to the vehicles. The video differs a

bit from her testimony. Despite Williams's claims otherwise, there is no indication that Catala brandished a weapon — his arms remained by his side when visible in the surveillance footage. After Catala was shot, he pulled something from his pocket and tossed it out of the video camera's field of view. It is not clear what was tossed, but Williams claims it was a semiautomatic handgun. No firearm was found at the scene during the investigation. Williams and Bostic both testified to being in fear for their lives by Catala's actions despite the depiction of events from the video played during their cross-examinations.

{¶ 4} At one point, Catala's cousin, who was preparing to deliver pizzas and knew Williams, noticed the discussion. He approached, and according to him, Williams smelled of alcohol and stated that "[y]our cousin said I hit his car, but I got him, I'm going to give him $50 or $100 or whatever it was." It did not appear to the cousin that Williams was upset or under any duress. He also did not see any firearms. He left to make his delivery but returned a short time later while the discussion between Williams and Catala was ongoing. After the shooting, Williams told Catala's cousin, "He had to get it, Lou. He had to get it."

{¶ 5} The surveillance video from the pizzeria depicted the following scene. Initially, most of the conversation between Catala and Williams occurred with Williams in the driver's seat of his vehicle and Catala standing in the open door. About 15 minutes into the encounter, Catala placed both his hands on the roof of Williams's vehicle, leaning down to continue the conversation. Catala was also smoking a cigarette, alternating it between hands as he smoked it.

{¶ 6} After approximately 20 minutes, Catala moved his vehicle from next to Williams's, to slightly behind it. The discussion continued, and Bostic exited the car, walking around it apparently surveying the damage. Williams stepped out of the car, and Bostic walked to and sat in the driver's seat. Right after that, Catala and Williams were walking around the car appearing to survey the damage themselves. Catala walked away from Williams. Williams immediately pulled a handgun from his pocket and shot Catala, who was still walking away but started to turn back toward Williams. There was no visible weapon in Catala's possession at the time. Williams then went after Catala's friend, who was backing away from the shooting (that is not depicted in the pizzeria's surveillance footage but is visible in nearby car lot's surveillance video). Catala crouched in front of Williams's vehicle. Bostic was still in the driver's seat. Catala stood up and checked himself, evidently to see if he was wounded, and then he went inside the pizzeria.

{¶ 7} Bostic exited Williams's car at that point and looked around. She *walked* across the street (evidently looking for Williams, who had run off after the shooting). The other victim in this incident, the friend of Catala, claims Williams chased him and fired more shots. Surveillance footage from the car lot depicts the victim backing away from Williams with his hands in the air. When Williams walked back to his car, Bostic turned and followed him, this time running because Williams appeared to have fired a shot down the street.

{¶ 8} Catala died from his wounds. The other victim, Catala's friend, was physically unharmed.

{¶ 9} The convenience store shooting is relatively straightforward, and at trial, Williams conceded that he shot at the clerks — claiming he was not in the right state of mind after murdering Catala days earlier. That incident, occurring three days after Catala's murder, was also captured on surveillance cameras. That footage captured audio. Williams entered the store and engaged in conversation with the two employees about the shooting at the pizzeria. The employees were concerned with the manner in which Williams asked the questions and his behavior. They asked him to leave, and he refused. A discussion ensued. One of the employees called 911 and was on the phone with the dispatcher relaying her information and a description of Williams. When Williams heard that, he brandished his handgun, the same one used to murder Catala, and threatened to rob the store. One of the employees ran back to the office, and Williams started shooting at the other employee, hitting her twice. She survived.

{¶ 10} Williams was indicted for felonious assault and two counts of murder for the killing of Catala, felonious assault for attempting to cause physical harm by means of a deadly weapon to Catala's friend, and for having weapons while under disability for possession and use of the firearm, along with several associated three-year firearm specifications. Williams was indicted for attempted murder and felonious assault with respect to the employee he wounded, two counts each of robbery pertaining to each victim at the convenience store, and for having weapons while under disability. Williams filed a pretrial motion seeking separate trials for the charges arising in the two incidents, but the trial court denied the motion.

Williams then elected to waive his right to a jury trial on the charges arising from the convenience store shooting, in effect bifurcating the trial.

{¶ 11} Williams was convicted of all charges. The multiple offenses committed against Catala merged into the murder conviction, and the offenses committed against the wounded convenience store employee also merged into one count of attempted murder. Williams was sentenced to a term of 15 years to life for the murder of Catala, with all other sentences on the underlying offenses being concurrently imposed. He was also found guilty of four, three-year firearm specifications, resulting in a 27-years-to-life aggregate term of imprisonment.

## II.     Law

{¶ 12} In this appeal, Williams advances eight assignments of error. Each will be addressed, but where appropriate, the various arguments will be combined and realigned for ease of reading.

### a.     Joinder of Offenses

{¶ 13} In the second assignment of error, Williams claims that the trial court erred by denying appellant's motion for separate trials. Williams's sole claim is that the charges pertaining to each event arose from "totally separate incidents, that occurred on different days" and should have been tried before separate juries. According to Williams, he was prejudiced by a "bootstrapping effect" of introducing evidence of both crimes at trial.

{¶ 14} Williams also claims that his election to have the crimes arising from the convenience store shooting tried to the bench, to in effect bifurcate the

proceedings, should not be deemed to impact his argument. Neither party has addressed whether Williams waived any argument with respect to the denial of relief from the joinder through waiving his right to a jury to resolve the charges relating to the convenience store shooting. The ensuing discussion, therefore, will solely focus on the standard as it relates to relief from joinder under Crim.R. 14 as the parties have presented it.

{¶ 15} "Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged * * * are of the same or similar character * * *." Crim.R. 8(A). Further, the joinder of offenses is permitted if those offenses "are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." *Id.* Joinder "conserves resources by avoiding duplication inherent in multiple trials and minimizes the possibility of incongruous results that can occur in successive trials before different juries." *State v. Hamblin*, 37 Ohio St.3d 153, 158, 524 N.E.2d 476 (1988). Crim.R. 14 allows the bifurcation of counts if the defendant is prejudiced by the joinder. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 49. Under Crim.R. 14, in pertinent part, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶ 16} Generally, joinder is disfavored where the jury could potentially confuse the issues and the facts essential to the elements of the distinct crimes. "To succeed on a motion to sever, a defendant 'must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial.'" *State v. Lytle*, 10th Dist. Franklin Nos. 15AP-748 and 15AP-754, 2016-Ohio-3532, ¶ 64, quoting *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981), syllabus.

{¶ 17} In *Lott*, the Ohio Supreme Court upheld a conviction for murder after unrelated charges were joined at trial. It was held that the defendant has the burden to affirmatively demonstrate prejudice from the joinder, and only then does the state bear any burden to negate such claims. *Id.* at 163. The prosecutor can use two methods to dispel the demonstrated prejudice caused by the joinder. *Id.* Under the first method, the "other acts" test, the state may argue that it could have introduced evidence of previous crimes under Evid.R. 404(B) even if the previous and current offenses had been severed for trial. *Id.* Even if Evid.R. 404(B) does not apply, the state may also demonstrate that the "evidence of each crime joined at trial is simple and direct." *Id.* at 163. The two methods under the *Lott* analysis are independent of each other.

{¶ 18} Williams does not present any argument pertaining to his burden to demonstrate prejudice from the joinder as required under Crim.R. 14. He simply presumes prejudice from the fact that the jury heard evidence demonstrating his

commission of the separate crimes. Williams has presented no authority to support the existence of a presumption of prejudice. App.R. 16(A)(7); *see also State v. Davis*, 38 Ohio St.3d 361, 364, 528 N.E.2d 925 (1988) (Waiving a right to a jury trial because of the possibility that a jury hears evidence of prior convictions does not give rise to a violation of the defendant's right to a jury trial; "A jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated."). His arguments instead focus on negating the state's burden to demonstrate the applicability of Evid.R. 404(B) or that the evidence of each incident is "separate and direct." Because Williams has not demonstrated the existence of prejudice, the burden never shifted to the state to demonstrate that the evidence would be admissible regardless of whether separate trials were conducted or that the evidence was simple and direct. *Lott* at 163.

{¶ 19} Before addressing the state's burden, the defendant must demonstrate the existence of prejudice caused by the joinder of counts for trial. Williams has not presented an argument upon which this conclusion could be reached. Without this panel impermissibly crafting an argument on Williams's behalf or through the establishment of a presumption of prejudice from the jury hearing evidence of interrelated crimes stemming from events occurring days apart, no relief can be afforded. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19.

{¶ 20} The second assignment of error is overruled.

### b.  Evidentiary Rulings

**{¶ 21}** In the fourth, fifth, and seventh assignments of error, Williams claims that (1) the trial court erred in permitting a police officer to testify about statements made by nontestifying witnesses in violation of Ohio Rules of Evidence and the Confrontation Clause; (2) the trial court erred by admitting the surveillance videos, which were not properly authenticated; and (3) the trial court erred by allowing the state to introduce "other acts" evidence under Evid.R. 404(B) to the jury in the bifurcated proceeding.

### i.  Nontestifying Witnesses

**{¶ 22}** At trial, one of the investigating officers interviewed Catala's friend, the second victim in the pizzeria shooting, immediately after the shooting. Williams chased after and at least threatened that victim with a firearm, an event memorialized on the surveillance video obtained from the car lot. In addition, an officer testified to the photo-array identification of Williams by the two employees of the convenience store. Only one of the employees testified at trial.

**{¶ 23}** On this point, Williams first argues that the officer was permitted to testify that the victim of the felonious assault during the pizzeria incident told the officer that he was shot at, which according to Williams is a violation of the Confrontation Clause. Williams cites two recent decisions from this court: *State v. Johnson*, 8th Dist. Cuyahoga No. 110942, 2023-Ohio-445, and *State v. Smith*, 8th Dist. Cuyahoga No. 111274, 2023-Ohio-603, in support of his argument.

{¶ 24} The Confrontation Clause generally precludes the introduction of testimonial statements at trial. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Although the Supreme Court has not defined what constitutes a "testimonial" statement, it has been held to apply to "'prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and responses to police interrogations.'" *State v. Dixon*, 2016-Ohio-1491, 63 N.E.3d 591, ¶ 45 (4th Dist.), quoting *State v. Mills*, 2d Dist. Montgomery No. 21146, 2006-Ohio-2128, ¶ 17. There are two overriding notions to be considered: (1) "not all those questioned by the police are witnesses and not all 'interrogations by law enforcement officers' * * * are subject to the Confrontation Clause." *Michigan v. Bryant*, 562 U.S. 344, 355, 131 S.Ct. 1143 179 L.Ed.2d 93 (2011), quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); and (2), "[a] 911 call * * * and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establish or prove' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827.

{¶ 25} Whether statements to police officers are testimonial depends on the primary purpose of the interrogation. "[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. Further, police interrogations of witnesses and victims can be deemed nontestimonial after the initial encounter if an

ongoing emergency exists. *Id.* An ongoing emergency can exist after the original threat to the victim has ceased to exist if there is a potential threat to the victim, police, or the public, or the victim needs emergency medical services. *Bryant* at 376. "[T]he Supreme Court has never defined the scope or weight of the 'ongoing emergency.'" *Woods v. Smith*, 660 Fed.Appx. 414, 428 (6th Cir.2016). The outer bounds of what is considered an "ongoing emergency" is purposely not defined and is instead based on a "highly context-dependent inquiry." *Bryant* at 363.

{¶ 26} Notwithstanding, any conclusion determining that there is no ongoing emergency is not dispositive of the Confrontation Clause question. *Cleveland v. Merritt*, 2016-Ohio-4693, 69 N.E.3d 102, ¶ 22 (8th Dist.). There is another step under the primary purpose test that reviewing courts must consider. "[I]n addition to whether there is an ongoing emergency, other relevant considerations to the primary purpose test include the formality versus informality of the encounter, and the statements and actions of both the declarant and the interrogators, *in light of the circumstances in which the interrogation occurs*." (Emphasis added.) *Ohio v. Clark*, 576 U.S. 237, 245, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015), citing *Bryant* at 360."

{¶ 27} Neither *Smith,* 8th Dist. Cuyahoga No. 111274, 2023-Ohio-603, nor *Johnson,* 8th Dist. Cuyahoga No. 110942, 2023-Ohio-445, followed the totality of the black-letter law pertaining to the Confrontation Clause, and in fact, relied on the dissent's analysis from *Merritt,* which is controlling authority in this district. *Smith* did not discuss *Merritt,* despite their factual similarity and *Smith's* tacit reliance on

the dissenting viewpoint's analysis. *Merritt* determined that the initial questioning of a domestic abuse victim by an officer responding to an emergency call for help was not testimonial despite the fact the officers determined that the scene was secured upon their arrival through the initial questioning. *See generally Merritt*. *Smith*, on the other hand, concluded that because the victim of abuse was separated from the attacker, she was "safe" because emergency responders arrived, although the victim was being treated for her injuries during the questioning. *See generally Smith*. According to *Smith*, *any and all* questioning by the first officer to respond to the emergency call was testimonial. *See id.*

{¶ 28} In *Smith*, the victim was receiving medical care from emergency medical technicians before police officers were able to respond to the initial call for an assault that had just occurred, with the suspect still at large. *Id.* The majority made no distinction as to any differences between the first questions posed by the responding officer (who had no information as to why he was responding) and any later questions posed by the officer or the EMT. *Id.* The black-letter law is unambiguous; "[a] 911 call * * * and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establish or prove' some past fact, but to describe current circumstances requiring police assistance." *Davis*, 547 U.S. at 827, 126 S.Ct. 2266, 165 L.Ed.2d 224. Although that rule is not entirely without exception, the law generally favors the admissibility of the witnesses' or victim's initial interaction with either a police officer responding to emergency calls for assistance or an EMT providing emergency medical treatment.

This, at the least, permits officers to obtain basic information to enable the appropriate level of response and ensure everyone's safety and it also recognizes that the primary purpose of a victim's seeking medical care for undisputed injuries is not to memorialize formal trial testimony.

{¶ 29} According to the *Smith* majority, admissibility of the victim's initial statements to the responding police officer was an all-or-nothing proposition. At a minimum, however, statements made to emergency responders are considered on a continuum. *Merritt* recognized that although at some point an emergency responder could veer into investigatory questioning, statements made at different points of the interrogation must be reviewed independently. *Merritt*, 2016-Ohio-4693, 69 N.E.3d 102. *Smith* simply declared that the first question posed by a police officer responding to an emergency call for assistance was testimonial because the emergency had already ended based on the victim's subsequent answers to the officer's initial questions.

{¶ 30} There is no precedent supporting that form of analysis. On the contrary, according to *Merritt,* which relied on generally accepted applications of black-letter law, the initial interaction with police officers responding to emergency calls for assistance are not testimonial because "'officers called to investigate need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.'" *Merritt* at ¶ 24, quoting *Davis*, 547 U.S. at 832, and *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Thus, the initial questions of the

first officer responding to an emergency call for help are ordinarily not testimonial when the officer is simply obtaining the information necessary to determine the appropriate response. *See id. Johnson,* 8th Dist. Cuyahoga No. 110942, 2023-Ohio-445, included the same truncated analysis that declined to apply the totality of the analysis as required under *Merritt.*

{¶ 31} Moreover, the *Smith* majority adopted the dissent's analysis from *Merritt. Smith,* 8th Dist. Cuyahoga No. 111274, 2002-Ohio-603. The dissent in *Merritt* would have found that introducing the initial statements made to responding officers at trial violated the Confrontation Clause because there was no ongoing emergency. *Merritt,* at ¶ 41, 43-44 (Stewart, J., dissenting). That conclusion was based on the victim's answers to the officer's initial questions revealing that (1) the dispute was largely private between two individuals; (2) the assailant was known to the victim; (3) nothing in the record indicated that the assailant posed a threat to the public because the assailant was already detained and there was no weapon involved; and (4) the victim was safe due to the police presence and the separation from the aggressor. *Id.*

{¶ 32} Despite the fact that the majority in *Merritt,* 2016-Ohio-4693, 69 N.E.3d 102, rejected that narrow focus under the ongoing emergency inquiry, the *Smith* majority used the same analysis, concluding that use at trial of the initial questioning by the first responding police officer violated the Confrontation Clause because the victim's answers to those initial questions arguably revealed that (1) the dispute was only between two individuals; (2) the assailant was known to the victim;

(3) nothing in the record demonstrated that the assailant posed a threat to anyone because police officers did not ask the victim about any weapons during the initial discussion; and (4) the victim was safe due to the arrival of the police and medical responders. *Smith* at ¶ 91-92. Thus, *Smith* tacitly treated the dissenting analysis as controlling over the analysis provided by the majority in *Merritt*.

{¶ 33} We cannot rely on *Smith* or *Johnson,* 8th Dist. Cuyahoga No. 110942, 2023-Ohio-445. Doing so would further the precedential rift caused by *Smith* and *Johnson*.

{¶ 34} In this case, however, it is not clear that Williams even preserved an objection to the officer's testimony with respect to the pizzeria incident based on the Confrontation Clause. This defines the scope of appellate review. When the officer initially testified as to the victim's statement at issue, the trial court sustained the defense's objection, which then prompted the state to elicit testimony regarding the excited utterance exception to Ohio's hearsay rule. No specific objections were included within this record. After obtaining testimony that the victim was still under the stress of excitement caused by the shooting, the court permitted the officer to testify as follows: "Q. Officer Miranda, what did [the victim] tell you? A. [The victim] stated that he was shot at."

{¶ 35} The state's evidentiary rules, however, are only applicable if the statement does not violate the Confrontation Clause: "Whenever the state seeks to introduce hearsay into a criminal proceeding, the court must determine not only whether the evidence fits within an exception, but also whether the introduction of

such evidence offends an accused's right to confront witnesses against him." *State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 38 (8th Dist.), citing *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 29; *see also State v. Issa*, 93 Ohio St.3d 49, 60, 752 N.E.2d 904 (2001). The excited utterance doctrine is not an exception to the Confrontation Clause.

{¶ 36} "'It is hornbook law that a defendant may not on appeal urge a new ground for his objection.'" *State v. Hernandez*, 8th Dist. Cuyahoga No. 106577, 2018-Ohio-5031, ¶ 4, quoting *State v. Milo*, 10th Dist. Franklin No. 81AP-746, 1982 Ohio App. LEXIS 12440, 15 (Sept. 30, 1982), and *Yuin v. Hilton*, 165 Ohio St. 164, 134 N.E.2d 719 (1956); *State v. Deadwiley*, 8th Dist. Cuyahoga No. 108488, 2020-Ohio-1605, ¶ 23. In *Hernandez*, the panel recognized that the specificity of the evidentiary objection defines the scope of appellate review. *Id.* at ¶ 5. In that case, the defendant objected to certain evidence on relevancy grounds. *Id.* In the appeal, the defendant attempted to claim that the evidence also violated Evid.R. 404(B), evidence of other acts. *Id.* The panel concluded that the defendant "forfeited the right to argue Evid.R. 404(B) as a ground for appeal."

{¶ 37} Because no specific objection based on the Confrontation Clause was preserved at the trial, appellant forfeited all but plain error. Evid.R. 103(A). Had Williams intended his objection to be based on the Confrontation Clause and not the state evidentiary rule, he would have been expected to proffer that specific objection to the trial court after the ruling was rendered based on the excited utterance exception to hearsay. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019,

9 N.E.3d 930, ¶ 103, citing Evid.R. 103(A) (although trial counsel objected to the evidence, the objection was based on a different rationale than advanced on appeal, and therefore, the assignment of error was reviewed for plain error). In order to establish plain error, an appellant "must show that an error occurred, that the error was plain (i.e., the error was an 'obvious' defect in the trial proceedings), and that but for the error, the outcome of the trial clearly would have been otherwise." *State v. Whitaker*, 169 Ohio St.3d 647, 2022-Ohio-2840, 207 N.E.3d 677, ¶ 39, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "[P]lain error should be found only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In this case, the officer's testimony did not implicate Williams — the victim merely told the officer that he was shot at. That statement could be deemed superfluous in light of the video evidence demonstrating the victim being threatened by Williams with the firearm.

{¶ 38} This is not the extraordinary case warranting appellate intervention even if the admission of the testimony was deemed to have been in error.

{¶ 39} With respect to the two employees of the convenience store, although Williams broadly claims that the officer's testimony violated his right to confront the witnesses, his sole argument pertains to whether the statements are inadmissible hearsay. Accordingly, our focus is on whether the statements were admissible under Evid.R. 801 or an exception to hearsay in light of the argument presented. On this

point, Williams's sole claim is that the statements were hearsay as defined under Evid.R. 801(C) and, thus, the trial court should have excluded the statements. Williams, however, failed to object to the officer's statements regarding the witnesses' photo-array identification of Williams at trial.

{¶ 40} As previously mentioned, under Evid.R. 103(A) "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [when] the ruling is one admitting evidence, [a] timely objection or motion to strike appears of record stating the specific ground of objection." Williams largely ignores the fact that he failed to timely object to the employees' identification statements made to the police officer testifying at trial. Because Williams has not presented an argument pertaining to the plain error standard of review, we cannot offer relief with respect to the photo-array identification by the two employees. We cannot substitute our own analysis on Willliams's behalf. *See Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19.

{¶ 41} The fourth assignment of error is overruled.

### ii. Authenticity of Surveillance Video

{¶ 42} In the fifth assignment of error, Williams claims the trial court erred by admitting the surveillance videos from the car lot into the trial record based on the lack of testimony authenticating the recordings. Williams never objected to the videos being introduced at trial. His first objection as to the authenticity of the videos obtained from the car lot's surveillance system came at the close of all

evidence when the state moved to admit its exhibits into the record. He did not object to the admissibility of the pizzeria's surveillance videos during trial, and in fact, during his own testimony Williams asked for the videos to be played for the jury's benefit. In this appeal, it is unclear which videos are being challenged.

{¶ 43} Because Williams failed to object to the admissibility of the surveillance videos obtained from the pizzeria and relied on those videos during his trial testimony, he has waived any error as to the authenticity of the recordings admitted into the record.

{¶ 44} Further, as it pertains to all the car lot videos introduced at trial, Williams conceded at trial that the videos displayed the encounter as it unfolded. Tr. 595:10-11 (explaining that he fired his weapon in the vicinity of the victim who was standing by Williams's car after the shooting as "captured" on the car lot's video surveillance cameras). Williams waived any authenticity concerns but, more to the point, arguably authenticated the car lot surveillance videos through his own testimony. In light of the limited arguments presented on the authentication issue, we conclude that this is not the exceptional case in which to exercise our discretion to grant relief on plain error review. *Hill*, 92 Ohio St.3d at 203, 749 N.E.2d 274, citing *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. The fifth assignment of error is overruled.

### iii. Evid.R. 404(B)

{¶ 45} In the seventh assignment of error, Williams claims the trial court erred by admitting videographic evidence of the convenience store shooting during

the jury portion of his bifurcated trial in violation of Evid.R. 404(B), which provides in pertinent part that "[e]vidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character." According to Williams,

> If the evidence was used to show the jury Williams still had his gun on October 24, 2020 — he already admitted that fact. The evidence was *likely* introduced to undermine the fact that he was defending himself on October 21, 2020, by implying he had a propensity to fire a gun.

(Emphasis added.) Disregarding the speculative nature of the argument presented, all of the statements at issue under this assignment of error were elicited during the state's cross-examination of Williams. The state did not seek to introduce evidence of the convenience store shooting in its case in chief as presented to the jury. This is an important distinction.

{¶ 46} It has been generally noted that "[t]he introduction of evidence of other bad acts can be prejudicial and is generally prohibited by Evid.R. 404(B)." *State v. Patton*, 8th Dist. Cuyahoga No. 62020, 1993 Ohio App. LEXIS 2677, 11 (May 27, 1993), citing *State v. Curry*, 43 Ohio St.2d 66, 68-69, 330 N.E.2d 720 (1975). Notwithstanding, if the defendant "opens the door" to this type of evidence, he cannot succeed in demonstrating prejudice. *Id.*, citing *State v. Greer*, 39 Ohio St.3d 236, 243, 530 N.E.2d 382 (1988), and *State v. Hartford*, 21 Ohio App.3d 29, 31, 486 N.E.2d 131 (8th Dist.1984).

{¶ 47} The video recording of the convenience store shooting was first discussed in front of the jury after Williams initially claimed selective amnesia as to

the whereabouts of the handgun he used to murder Catala during the state's cross-examination. Tr. 600:6-15. He eventually disclosed that he sold the firearm after the convenience store shooting but not until after the state presented the video recording depicting Williams using the weapon at the convenience store to refresh his recollection as to his continued possession of the firearm. At no point in time did the state rely on Evid.R. 404(B) as a basis to discuss the convenience store shooting during its cross-examination of Williams. The state contends that the introduction of the convenience store shooting during the jury phase of trial was based on attacking Williams's character for truthfulness based on his evasive answers regarding the firearm that he supposedly used in self-defense.

{¶ 48} During the pretrial proceedings in which the trial court concluded that the convenience store shooting evidence would not be presented to the jury, the trial court expressly cautioned that although not generally admissible in the state's case to the jury, it would be admissible if the defense "opened the door" during its presentation of evidence. Tr. 207:9-208:11. During the state's cross-examination of Williams, the trial court sustained several objections when the state's questioning veered too far from the limited door opened by Williams's testimony. Tr. 604:8, 605:22, 606:3.

{¶ 49} Williams did not file a reply brief to offer any further clarification in response to the state's arguments or the procedural posture of when the evidence was presented to the jury and in what context. *See* App.R. 16(A)(7).

{¶ 50} The sole question, left unaddressed in this appeal, is whether Williams "opened the door" to the state's line of questioning during his testimony by failing to disclose when he disposed of the weapon he used to murder Catala. Because he has not addressed the procedural foundation of the challenged evidence, we cannot offer relief. It is not this panel's obligation to develop or hone arguments. *See Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19. In light of the broad nature of Williams's argument, one that does not account for his opening the door to the video during his cross-examination, the seventh assignment of error is overruled.

### c. Weight of the Evidence

{¶ 51} In the first and third assignments of error, Williams claims that his convictions are against the weight of the evidence based on his testimony establishing the elements of self-defense. According to Williams, the record conclusively demonstrates that he acted in self-defense when his testimony is considered to the exclusion of the state's evidence rebutting the assertion of self-defense. In the alternative, Williams claims that his convictions for killing Catala are not supported by sufficient evidence or are against the weight of the evidence because the state failed to prove that Williams purposefully acted in the murder of Catala.

{¶ 52} When evaluating a claim that a jury verdict is against the weight of the evidence, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether

in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 53} The act of asserting self-defense is a concession that the defendant "had the purpose to commit the act, but * * * was justified in his actions." *State v. Talley*, 8th Dist. Cuyahoga No. 87143, 2006-Ohio-5322, ¶ 45. Self-defense, thus "presumes intentional, willful use of force to repel force or escape force." *State v. Champion*, 109 Ohio St. 281, 286-287, 142 N.E. 141 (1924). In this regard, Williams's arguments with respect to lack of evidence demonstrating his purposefully shooting Catala are without merit. The fact he claimed to be acting in self-defense demonstrates the requisite mens rea for the commission of the murder. Self-defense offers a justification for the action but necessarily concedes that the act was purposely committed.

{¶ 54} Williams's arguments that the jury lost its way in rejecting his assertion of self-defense is solely focused on his evidence to the exclusion of the state's evidence. It is well-settled that "'a conviction is not against the manifest weight of the evidence simply because the jury rejected the defendant's version of

the facts and believed the testimony presented by the state.'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28; *see also State v. Kouame*, 8th Dist. Cuyahoga No. 108559, 2020-Ohio-3118, ¶ 53. Without a more developed analysis provided by Williams, we cannot conclude that the jury lost its way on this factual question. We agree that his evidence, Bostic's and his own testimony, demonstrated a basis to assert self-defense, which is why the trial court instructed the jury on self-defense and the state's burden of proof. The state, however, presented some evidence that Catala was not armed or brandishing a firearm during his interaction with Williams and that Catala was shot as he walked away from Williams and appeared to be no threat to Williams or Bostic. Further, Williams conceded that he was under the influence of cocaine and his perception of the events may have been impacted. In short, the jury was free to reject Williams's version of events and he has not demonstrated this to be the exceptional case warranting appellate intervention.

{¶ 55} The first and third assignments of error are overruled.[1]

### d. Miscellaneous Assignments of Error

{¶ 56} In the sixth and eighth assignments of error, Williams claims that the

---

[1] Williams also claims that the convictions based on the crimes committed against the nontestifying victims, Catala's friend and the store clerk who was present but not shot, must be vacated since they did not testify at trial. Williams provides no citation to authority to support that broad proposition that a victim must testify in order for a conviction to be sustained on appeal as required by App.R. 16(A)(7). That argument is summarily overruled.

trial court improperly denied a lesser-included offense jury instruction on the felony murder count, with Catala being the named victim, and the trial court erred by denying a motion for mistrial because a police officer revealed to the jury that Williams was in jail. These assignments of error are devoid of merit or not developed enough to warrant further discussion.

{¶ 57} The felony murder conviction, based on a violation of R.C. 2903.02(B), merged into the murder conviction that was a violation of R.C. 2903.02(A). Any error with respect to the jury instructions as to the merged felony-murder offense, which is not a final conviction based on that merger, is necessarily harmless because his murder conviction has been affirmed in this appeal. *See, e.g., State v. Hawkins*, 8th Dist. Cuyahoga No. 109452, 2021-Ohio-1484, ¶ 38, citing *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14, and *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990). Even if we found error in failing to give the requested jury instruction, which would be purely advisory, the sufficiency of the felony-murder conviction would not result in any relief being afforded since there is no final conviction on that count and a new trial would not be necessary.

{¶ 58} And finally, in three paragraphs of explanation and analysis, Williams claims that the trial court erred by failing to provide the jury with a curative instruction after a police officer referenced jail calls made by Williams. Williams, however, expressly refused the trial court's invitation to provide that curative instruction. Tr. 556:6-10. Any error with regard to the lack of an instruction was

invited. *See Hal Artz Lincoln-Mercury Inc. v. Ford Motor Co. Lincoln-Mercury Div.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus (the invited doctrine error provides that a defendant may not "take advantage of an error which he himself invited or induced"). The sixth and eighth assignments of error are overruled.

### III.   Conclusion

{¶ 59} The defendant's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, J., CONCURS;
MICHELLE J. SHEEHAN, P.J., CONCURS IN JUDGMENT ONLY