[Cite as *State v. Boyce*, 2024-Ohio-464.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,            :

                       No. 112610

v.                                      :

ANTHONY BOYCE,                          :

    Defendant-Appellant.           :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 8, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676485-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Andrew M. Boyko, Assistant Prosecuting
Attorney, *for appellee*.

Susan J. Moran, *for appellant*.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Anthony Boyce ("Boyce"), appeals his unlawful restraint conviction and claims the following error:

> The trial court erred in allowing a testimonial statement to be played to the jury as part of an otherwise acceptable 911 call.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Boyce was charged with one count of kidnapping in violation of R.C. 2905.01(B)(2) a first-degree felony. The charge was filed after police responded to a report that a man was using a knife to restrain a woman's movement inside an apartment located on Carson Avenue in Cleveland. A portion of the 911 call was played during the jury trial and was entered into evidence over defense objection. Officer Robert Musson ("Officer Musson") testified at the trial that he responded to the call and that when he entered the apartment, he found Boyce restraining a woman on a chair in the kitchen.

{¶ 4} According to Officer Musson, Boyce was holding his left arm around the victim "up by her left shoulder" while holding a kitchen knife in his right hand. (Tr. 198, 200.) The victim was begging Boyce "to please put the knife down." (Tr. 204.) Body-camera footage from Officer Musson's body camera captured the scene and was entered into evidence. Officer Musson and his partner, Officer Rodney Munson, asked Boyce to drop the knife. Boyce complied, and the officers placed him under arrest. (Tr. 205, 239.) The victim told police that Boyce had never acted this way before and that she did not believe he would harm her. (Tr. 232-234.)

{¶ 5} After Boyce was arrested, the officers swept the apartment because Boyce stated there were people in the apartment trying to harm him. (Tr. 218.) Jeffrey Williams ("Williams"), the victim's brother who arrived on the scene shortly before police arrived, testified that Boyce was hallucinating at the time he was

restraining the victim. (Tr. 245.) According to Williams, Boyce "swore that somebody was actually * * * climbing up trying to come through the window on the second floor right there." (Tr. 246.) Upon questioning by police, Boyce denied having any mental health or other psychiatric disorder. (Tr. 234.) Earlier that evening, Boyce and the victim used drugs and "got high." (Tr. 218, 236.)

{¶ 6} After hearing the evidence, the jury found Boyce not guilty of kidnapping but guilty of unlawful restraint, a lesser-included offense of kidnapping. Unlawful restraint is a third-degree misdemeanor. R.C. 2905.03(C). The court sentenced Boyce to 60 days in jail with credit for the 60 days Boyce spent in jail awaiting trial. This appeal followed.

## I. Law and Analysis

{¶ 7} In the sole assignment of error, Boyce argues the trial court erred in allowing a particular statement in the recording of the 911 call to be played for the jury. During the 911 call, the dispatcher asked the caller if Boyce had previously moved the knife to the victim's throat. Boyce argues this question was intended to elicit an inadmissible testimonial response that should have been excluded. Boyce argues the question also invited the caller, the victim's niece, to inappropriately speculate about what Boyce did before she entered the room and witnessed the event because the caller responded that she believed Boyce had put a knife to her aunt's throat before she entered the room.

{¶ 8} Under both the United States and Ohio Constitutions, a criminal defendant has a right to confront witnesses. The Sixth Amendment's Confrontation

Clause, which is binding on the states through the Fourteenth Amendment, states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."  Similarly, Article I, Section 10 of the Ohio Constitution states that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face."

{¶ 9} Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.  Evid.R. 801(C).  Thus, whenever the state seeks to introduce hearsay into evidence in a criminal proceeding, the court must determine not only whether the evidence fits within an exception to the hearsay rule, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him.  *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 29. Boyce does not contend that the caller's statements violated any hearsay rules.  He argues only that they violated his constitutional right to confront witnesses against him.

{¶ 10} In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial." *Id*. at 59.  The court explained that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  Thus, the state may not introduce "testimonial" hearsay against a criminal defendant, regardless of whether such

statements are deemed reliable, unless the defendant has an opportunity to cross-examine the declarant. *Id*. at 53-54, 68.

{¶ 11} However, the *Crawford* Court held that the Confrontation Clause only requires exclusion of "testimonial" as opposed to "nontestimonial" evidence. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). If a statement is not testimonial, the principles embodied in the Confrontation Clause do not apply. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

{¶ 12} Although the *Crawford* Court did not specifically define the term "testimonial," it explained that hearsay statements are implicated by the Confrontation Clause when they are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 52.

{¶ 13} Two years after *Crawford*, the United States Supreme Court announced the "primary purpose test" in *Davis*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. In *Davis*, the court explained that whether a statement is testimonial depends on the "primary purpose" of the statement. *Davis* at 822. "[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis* at 822. By

contrast, statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. *See also State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, paragraph one of the syllabus.

{¶ 14} *Davis* identified four characteristics that distinguish nontestimonial statements from testimonial statements: (1) the declarant describes contemporaneous events as they are actually occurring rather than describing past events; (2) an objective ongoing emergency exists; (3) the nature of what is asked and answered, viewed objectively, is necessary to be able to resolve the emergency; and (4) the interview is of an informal nature. *Davis* at 826-828*; see also Cleveland v. Johnson*, 8th Dist. Cuyahoga No. 107930, 2019-Ohio-3286, ¶ 18.

{¶ 15} Boyce contends the dispatcher's question about whether he had previously pointed the knife to the victim's throat violates the Confrontation Clause because it refers to a past event rather than a presently ongoing emergency. He also asserts that whatever the caller would have answered, the response would not assist police in an ongoing emergency.

{¶ 16} However, the call was made contemporaneous with Boyce's restraint of the victim. Although the caller was not in the room for the entire duration of the call, she observed Boyce restraining the victim with the large knife, and he was still restraining her with the knife after the 911 call had ended and police had arrived on

the scene and removed the threat. Thus, the caller's statement that Boyce may have held the knife to the victim's throat related to the ongoing emergency.

{¶ 17} And, the dispatcher's questions were directly related to the ongoing emergency. The dispatcher asked, "[W]hat kind of knife does he have"; "[I]s he holding it to her throat or where is he holding it to?" (State's exhibit No. 4.) In response, the caller told the dispatcher that he was holding it "by his side," and "it's a big one." (State's exhibit No. 4.) She also told the dispatcher that he "probably moved it up to her neck." Thereafter, the dispatcher asked, "Where is he holding it at right now?" (State's exhibit No. 4.)

{¶ 18} That the threat was ongoing could not be more clear, especially when any factfinder considers the 911 caller's statements together with the video from Officer Musson's body camera. When Officer Musson entered the room, the victim was pleading with Boyce to "put the knife down." (State's exhibit No. 1; tr. 199 and 204.) Officer Musson observed that Boyce was holding the knife "facing up toward her" "close to her body." (Tr. 201.) The knife, which is clearly visible in the body-camera footage, appears to be six to eight inches long. According to Officer Musson, the victim "appeared in distress [and] worried as I guess anyone would be." (Tr. 204, 232, and 236.) Officer Musson's testimony and the footage from his body camera demonstrate that the emergency was still ongoing after the 911 caller had made the statement to the dispatcher. Viewing the totality of the evidence, it is clear that the caller's statements in response to the dispatcher's questions were nontestimonial and did not violate the Confrontation Clause.

{¶ 19} But even if the caller's statements were admitted in error, the admission of the evidence was harmless as a matter of law. "'The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence.'" *State v. Keith*, 8th Dist. Cuyahoga No. 69267, 1997 Ohio App. LEXIS 914, *25 (Mar. 13, 1997), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Crim.R. 52(A) defines the harmless-error doctrine in criminal cases and provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶ 20} In determining whether the erroneous admission of evidence constitutes harmless error under Crim.R. 52(A), courts apply the following three-part test:

> "First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. * * * Second, it must be determined whether the error was not harmless beyond a reasonable doubt. * * * Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. * * *"

*State v. Boaston*, 160 Ohio St.3d 46, 2020-Ohio-1061, 153 N.E.3d 44, ¶ 63, quoting *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, 28 N.E.3d 1256, ¶ 37, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25, 27-29, 33.

{¶ 21} As previously stated, Boyce was charged with kidnapping, in violation of R.C. 2905.01(A). R.C. 2905.01(B)(2) states in relevant part:

No person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * :

(2) Restrain another of the other person's liberty.

{¶ 22} Thus, in order to find an accused guilty of kidnapping under R.C. 2905.01(B)(2), the jury would have to find that the defendant used force, threat, or deception to restrain the victim's liberty. However, the jury did not find Boyce guilty of kidnapping. It found instead that Boyce was guilty of unlawful restraint, in violation of R.C. 2905.03(A), a lesser-included offense of kidnapping.

{¶ 23} R.C. 2905.03(A) provides: "No person, without privilege to do so, shall knowingly restrain another of the other person's liberty." In contrast to the kidnapping statute, R.C. 2905.03(A) does not require proof of force, threat, or deception in order to be found guilty of unlawful restraint. Furthermore, Officer Musson's body camera and testimony unequivocally established that Boyce was restraining the victim's liberty without privilege to do so. Thus, even if the caller's statement that she believed Boyce may have raised the knife to the victim's throat had been excluded, the remaining evidence would have supported the jury's finding that Boyce committed unlawful restraint beyond a reasonable doubt. Therefore, the admission of the caller's statement was harmless.

{¶ 24} The sole assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., CONCURS;
EMANUELLA D. GROVES, J., DISSENTS (WITH SEPARATE OPINION)

EMANUELLA D. GROVES, J., DISSENTING:

{¶ 26} I respectfully dissent from the majority decision. I believe the 911 caller's statement that she believed Boyce may have held the knife to the victim's throat was testimonial and its admittance into evidence was not harmless error as a matter of law. Consequently, I would have found that Boyce was denied his right to confront the witness against him and reversed the conviction and remanded for a new trial.

{¶ 27} Boyce contends that the dispatcher's question about whether Boyce had previously pointed the knife to the victim's throat violated the Confrontation Clause because it referred to a past event rather than a presently unfolding emergency. He also asserts that whatever the caller would have answered, the response would not assist police in an ongoing emergency. Notably, the caller informed the dispatcher that she did not know whether Boyce held a knife to the victim's throat because she was not present at the scene the entire time.

Nonetheless, she speculated that Boyce "probably moved it up to her throat." (State's exhibit No. 4).

{¶ 28} As stated by the majority, nontestimonial and testimonial statements can be distinguished by four characteristics: (1) the declarant describes contemporaneous events as they are actually occurring rather than describing past events; (2) an objective ongoing emergency exists; (3) the nature of what is asked and answered, viewed objectively, is necessary to be able to resolve the emergency; and (4) the interview is of an informal nature. Majority opinion at ¶ 14, citing *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *Cleveland v. Johnson*, 8th Dist. Cuyahoga No. 107930, 2019-Ohio-3286, ¶ 18.

{¶ 29} Given the circumstances surrounding the 911 call, characteristics two and four were present. Characteristics one and three require review. In regard to the first characteristic, the caller was not describing a contemporaneous event as to the placement of the knife, but a past event. Additionally, she did not observe the knife held at the victim's throat. However, she did observe Boyce possessing the knife. So, the statement that she believed Boyce probably moved the knife to the victim's throat was not contemporaneous.

{¶ 30} The next consideration is whether the nature of the question and answer were necessary to resolve the emergency. An objective response is, no, knowing the placement of the knife at the victim's throat did not resolve the emergency. Certainly, the mere possession of the "big knife" as described by the caller established the emergency.

{¶ 31} The emergency was verified when the caller stated that Boyce was holding a knife "by his side" and it was a "big one." (State's exhibit No. 4.) Arguably, the statement about the knife to the throat would have never been made but for the dispatcher's question. The caller's response to the dispatcher's question where he previously held the knife ventured into testimonial territory. The introduction of the statement into evidence beyond the verification of the ongoing emergency without the opportunity to cross-examine the person who made the statement violated Boyce's right of confrontation, especially under these circumstances.

{¶ 32} Having found the admission of the 911 caller's response that "he probably moved it up to her throat," inadmissible, I would have also found that admission of this statement into evidence was not harmless as a matter of law. The question is whether the statement that Boyce may have held the knife to the victim's throat impacted the jury's determination that Boyce unlawfully restrained the victim. As a preliminary matter, it is important to keep in mind a critical fact surrounding the incident. The evidence included a statement that Boyce was hallucinating; he claimed that someone was trying to climb through the window. This evidence is undisputed.

{¶ 33} With this in mind, the manner in which Boyce was holding the knife is particularly important in determining Boyce's intent to knowingly restrain the victim. The introduction of the statement that the knife may have been at the victim's throat, which is not supported by the brother's testimony nor body-cam video, undeniably impacts the evaluation of Boyce's intent. A knife at the victim's

throat demonstrates a willfulness to restrain the victim with force. Additionally, it unquestionably diminishes Williams' statement that Boyce "swore that somebody was actually * * * climbing up trying to come through the window on the second floor right there." (Tr. 246.) Where Boyce held the knife can be determinative of his intent. Consequently, a reasonable possibility was created that the statement contributed to the jury's determination that Boyce restrained the victim. Therefore, admission of the statement was not harmless beyond a reasonable doubt.

{¶ 34} We next review the strength of the remaining evidence against Boyce to determine whether it establishes his guilt beyond a reasonable doubt. Without the statement, the only evidence to support Boyce's conviction is the victim sitting on Boyce's lap; Boyce holding his left arm around the victim "up by her left shoulder"; Boyce holding a kitchen knife in his right hand; the brother's testimony Boyce was "holding the knife in front of her like he was scared, like someone else was there" (tr. 245); and the victim telling Boyce to "put the knife down."

{¶ 35} Interestingly, the victim, who did not testify, did not state, "let me go." As a matter of fact, she did not utter any statement to the police about Boyce restraining her. According to the police report, which was read into the record, the victim stated Boyce grabbed her because people were trying to attack them. Furthermore, she stated that she did not believe that Boyce was going to hurt her. Nonetheless, the majority finds, "Officer Musson's body-camera and testimony unequivocally established that Boyce was restraining the victim's liberty without the privilege to do so." Yes, the body-cam video and testimony support the fact that

Boyce held the victim by the shoulder, but the intent element of knowingly is needed for an unlawful restraint conviction. Consequently, I would have found that once the statement is excised the remaining evidence does not establish Boyce's guilt beyond a reasonable doubt.

{¶ 36} Accordingly, I would sustain Boyce's assignment of error, reverse his conviction, and remand for a new trial.